IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**CHARLES TAYLOR,**
      **Petitioner,**

**v.**                                 **Case No.  5:07cv137/RS/MD**

**WALTER A. MCNEIL,**[1]
      **Respondent.**

---

## ORDER and
## REPORT AND RECOMMENDATION

      **Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent has filed a response (doc. 14) to which petitioner has replied (doc. 17).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).   It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.**

---

[1]**Walter A. McNeil succeeded James R. McDonough as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d)(1).**

### BACKGROUND[2]

In the early morning hours of March 13, 2002, petitioner and a confederate confronted Michael Knockel as Mr. Knockel was walking home.  Some manner of argument or confrontation ensued, and petitioner struck Mr. Knockel in the head with a baseball bat.  Mr. Knockel made it home, and was later taken to the hospital and underwent brain surgery to relieve pressure in his cranium.  He died in the hospital a month later.  On April 24, 2002 petitioner was charged in the Circuit Court of Bay County, Florida in a one count information with second degree murder.

The case against petitioner was tried to a jury in July 2003.  There were two major issues at trial.  The first was whether petitioner hit Mr. Knockel or whether Mr. Knockel was hit during a fight at a bar, or even during a domestic dispute with his wife.  Petitioner was found guilty, so the jury accepted the state's version of how Mr. Knockel was injured.  The second issue, and the one that involves the claim for relief in this court, involved the reason for Mr. Knockel's death.

The state presented testimony by the medical examiner that Mr. Knockel's heart stopped because he aspirated food from his stomach into his lungs and could not breathe.  The defense presented medical testimony that Mr. Knockel was progressing on the day of his death and his doctors were contemplating transferring him to the rehabilitation floor.  However, he suddenly went into cardiac arrest and died for reasons probably unrelated to the blow to his head.  The defense testimony tended to show that Mr. Knockel arrested when his airway became clogged with a piece of gauze or tissue in the roof of his mouth.  The gauze or tissue was originally placed there by Mr. Knockel's wife, as Mr. Knockel had done for years, to cover a congenital cleft palate that left a hole in the roof of Mr. Knockel's mouth.  While

---

[2]The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution. Where there are conflicting inferences and disputes exist, this Court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution. *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984).  Although this court is not called on to address directly the sufficiency of the evidence, the evidence presented to the jury plays a part in the court's analysis.

hospitalized Mr. Knockel developed a sinus infection allegedly attributable to the gauze.  Petitioner's counsel's theory at trial was that Mr. Knockel died from complications resulting from a combination of the sinus infection and the cleft palate being covered with gauze, upon which he choked, and therefore his death was completely independent of the head injury.  The jury accepted the state's theory and found petitioner guilty of second degree murder.

During trial the state requested a special jury instruction concerning intervening causes.  Defense counsel objected to the instruction, arguing that although it was a correct statement of the law, it was not needed because he was not arguing that Mr. Knockel died from medical malpractice (ex. E, pp. 308-09).  "In order to be entitled to a special jury instruction, the [state] must prove: (1) the special instruction was supported by the evidence; (2) the standard instruction does not adequately cover the [state's] theory of the case; and (3) the proposed instruction accurately states the law and would not confuse or mislead the jury." *Billie v. State*, 963 So.2d 837 (Fla. 3d DCA 2007) (citing *Stephens v. State*, 787 So.2d 747, 756 (Fla. 2001)).  The state requested the instruction because it apparently feared the jury might think that medical malpractice would excuse petitioner's act, whether he argued it or not.  The trial court held that the instruction accurately stated the law, overruled the objection and instructed the jury that:

> The defendant cannot escape responsibility for an act which in point of fact produces death.  Where the act itself is dangerous to life, mere erroneous treatment of the result of that act does not excuse the act.

(Doc. 14, ex. E, pp. 308-309, 366).[3]  Petitioner contends here that the jury instruction was incomplete and misleading, and that his appellate counsel provided ineffective assistance of counsel in not raising the issue on appeal.

---

[3]Hereafter all references to exhibits will be to doc. 14 unless otherwise noted.

## STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

**conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.**

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); *Ramdass v. Angelone*, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by Parker v. Head*, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  *Lockyer*, 538 U.S. at 73 (quoting *Williams*, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our

cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting *Williams*, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." *Williams*, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g. Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); *Jones v. Walker*, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti v. Quarterman*, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); *Jones*, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## TIMELINESS

Respondent contends that the instant petition is untimely by two days. Petitioner contends that the petition was filed with one day to spare. Because petitioner filed this § 2254 petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA governs the present petition. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Pursuant to 28 U.S.C. § 2244, a one-year period of limitation applies to the filing of a federal habeas corpus petition by a person in custody pursuant to a state court judgment. The limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1). According to the tolling provision of § 2244(d), the time during which a "properly filed" application for state post-conviction or other collateral review is pending shall not be counted toward any period of limitation. 28 U.S.C. § 2244(d)(2).

In the instant case, petitioner has not asserted that a government-created impediment to his filing existed, that he bases his claims on a right newly recognized by the United States Supreme Court, or that the facts supporting his claims could not have been discovered through the exercise of due diligence before his conviction became final. Thus, the statute of limitations must be measured from

the remaining trigger, which is the date on which his conviction became final.  *See* 28 U.S.C. § 2244(d)(1).

Both parties agree that the prison mailbox rule[5] applies to petitioner's filings, and both parties agree to the following critical dates:  The First District Court of Appeal of Florida (First DCA) rendered its opinion affirming petitioner's conviction on direct appeal on June 22, 2004.  The 90th day for petitioner to seek certiorari review in the United States Supreme Court was September 20, 2004.  No petition for certiorari was filed, so September 20, 2004 was the day petitioner's conviction became final, and September 21, 2004 was the day the clock started ticking - the first day that counted against petitioner for determining the limitation period.  Petitioner filed a motion for post-conviction relief in the state court pursuant to Fla. R. Crim. P. 3.850 on April 18, 2005, so the previous day, April 17, 2005 was the last day counted against him.  Here the parties' computations diverge.  Respondent says that 210 days passed in the interim; petitioner says that 209 days passed.  Petitioner is correct.  Therefore the clock had counted 209 days against petitioner up to the time he filed his Rule 3.850 motion.

The Rule 3.850 motion was denied, and after an unsuccessful appeal the First DCA issued its mandate on November 2, 2006.  *Taylor v. State*, 939 So.2d 1065 (Fla. 1st DCA 2006) (Table).  Therefore, the clock started ticking again on November 3, 2006, the 210th day.  Petitioner filed a Rule 3.800(a) motion to correct illegal sentence in the trial court on April 8, 2007.  Both parties agree that the Rule 3.800(a) motion would toll the limitation period as long as it was filed prior to expiration of that period.  Respondent contends that it was not.  He computes the time between November 3, 2006 and April 7, 2007 (the last day before the Rule 3.800(a) motion was

---

[5]Respondent acknowledges that Florida has adopted the "mailbox rule." (Doc. 14, p. 6).  *See* FLA. R. APP. P. 9.420(a)(2).  *See also Haag v. State*, 591 So.2d 614 (Fla. 1992).  Under this rule, an incarcerated *pro se* party's pleading is deemed filed on the date it was delivered to prison officials for mailing.  Respondent notes that each of petitioner's relevant filings show an institutional mail stamp, which memorializes the date the pleading was delivered to prison authorities for mailing, and is therefore the date the pleading is deemed "filed."

filed) as 157 days which, added to the (correct) 209 initial period, would total 366 days.  Therefore, according to respondent's computation (as corrected for the first tolling period), the 365 days allowed by the AEDPA expired the day before petitioner's Rule 3.800(a) motion was filed, and the instant petition is untimely. Petitioner counts the intervening time from November 3, 2006 to April 7, 2007 as 155 days, meaning his Rule 3.800(a) stopped the clock with a day to spare.   Both calculations are incorrect.  There are 156 days, inclusive, between November 3, 2006 and April 7, 2007.  Adding 156 days to the initial 209 period equals 365 days, making April 7, 2007 the 365th, and last, day for petitioner to file his Rule 3.800(a) motion (or to seek habeas relief in this court).   However, April 7, 2007 was a Saturday. Therefore the deadline for filing was extended to the next Monday, or until April 9, 2007.  *See* Fla. R. Crim. P. 3.040.  Petitioner placed his Rule 3.800(a) petition in the prison mailbox on April 8, a Sunday, a day before the deadline, and it was therefore a tolling motion.  The Rule 3.800(a) was not ruled on until long after, but petitioner filed his federal habeas petition while that motion was pending and while the clock was stopped.  This federal petition is therefore timely.

## PETITIONER'S GROUND FOR RELIEF

Petitioner presents a single ground for federal habeas relief.  He contends that he was denied his sixth amendment right to the effective assistance of appellate counsel based on appellate counsel's failure to raise the trial court's error in giving the jury an incomplete and inaccurate special jury instruction (doc. 1, p. 6).

### Clearly Established Federal Law

In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that:  (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d

674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*). In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler* at 1314. "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance: "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance." *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc). Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness. *Chandler* at 1314 (footnote omitted). Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation. Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.

*Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." 466 U.S. at 693, 104 S.Ct. at 2067. Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694, 104 S.Ct. at 2068. Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not

sufficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).   In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

An ineffective-assistance-of-appellate-counsel claim is considered under the same two-part test announced in *Strickland*. *Grubbs v. Singletary*, 120 F.3d 1174, 1176 (11th Cir. 1997).  In order to prove ineffective assistance of appellate counsel, a defendant must show (1) counsel's performance was constitutionally deficient, and (2) he was prejudiced as a result. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.  If the defendant makes an insufficient showing on one component, the court need not address the other.  *Id*. at 697, 2069.  Unless the petitioner can rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," he cannot show that counsel's performance was constitutionally deficient.  *Id*. at 689, 2065.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

<u>State Court Decision</u>

As noted above, the trial court gave a special instruction at the state's request over the objection of trial counsel.  Appellate counsel did not raise the issue on appeal, and petitioner's conviction and sentence were affirmed.  Petitioner filed a motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850 in which he raised two claims of ineffective assistance of counsel, neither of which is relevant to the instant claim (ex. I, pp. 121-146), which the trial court denied (ex. I, pp. 154-156).  Petitioner filed a Rule 3.800(a) motion to correct illegal sentence, again raising issues unrelated to the instant federal petition (ex. R).  The state courts denied relief.

*Taylor v. State*, 969 So.2d 1023 (Fla. 1st DCA 2007) (Table).  In the interim (while the clock was stopped) petitioner filed a petition for habeas corpus in the First DCA in which he appropriately raised the issue he advances here (ex. S).  The appellate court denied the petition without opinion.  *Taylor v. State*, 930 So.2d  626 (Fla. 1st DCA 2006) (Table).   Respondent does not claim that the issue was not properly exhausted.

     <u>Federal Review of State Court Decision</u>

     The state court's summary denial included no findings, so it is appropriate to conclude that the state court found no deficient performance, or no prejudice, or both.  This court must therefore determine whether the state court's ruling resulted "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.

     As noted above, the court instructed the jury, over objection, as follows:

> The defendant cannot escape responsibility for an act which in point of fact produces death.  Where the act itself is dangerous to life, mere erroneous treatment of the result of that act does not excuse the act.

Petitioner says that the instruction *should* have read as follows:

> The defendant cannot escape responsibility for an act which in point of fact produces death, which death might possibly have been averted by some possible mode of treatment.  The true doctrine is that, where the wound is in itself dangerous to life, mere erroneous treatment of it or of the wounded man suffering from it will afford the defendant no protection against the charge of unlawful homicide.

This language is a direct quote from *Johnson v. State*, 64 Fla. 321, 59 So. 894, 895 (1912), which petitioner says is the correct instruction.  Petitioner contends that his version should have been given because it is an approved special jury instruction, but he is incorrect.  No such instruction appears in the *Florida Standard Jury Instructions - Criminal*.

     Even so, petitioner contends that because the court gave an "inaccurate and incomplete jury instruction that changed 'wound' to 'act' and deleted two entire

clauses, the jury was left with the incorrect impression that if Mr. Knockel died from <u>anything</u> while in the hospital, that Petitioner must be found guilty." (Doc. 1, p. 25) (emphasis in original). Petitioner cannot succeed on this issue because to do so he would have to show that his appellate counsel was ineffective in not appealing an erroneous jury instruction. But the correctness of the jury instruction is a question of state law, and the state court's implicit determination that the instruction was a correct statement of the law is a finding that is binding on this court. *See Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) ("the validity of the claim that [petitioner's] appellate counsel failed to assert is clearly a question of state law, and we must defer to the state's construction of its own law"), *superseded by statute on other grounds as stated in Hargrove v. Solomon*, 227 Fed. Appx. 806 (11th Cir. 2007); *Alvord,* at 1291 (affording deference to state court's decision "to the extent it decide[d] the validity of [the petitioner's] underlying state law claims"); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (holding that "[i]t is a fundamental principle that state courts are the final arbiters of state law, federal habeas courts should not second-guess them . . ." (quotation and citation omitted)); *see also Will v. Secretary for Dep't of Corrections*, 278 Fed. Appx. 902, 908 (11th Cir. 2008) ("Although an ineffective-assistance-of-counsel claim is a *federal* constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when the validity of the claim that counsel failed to assert is clearly a question of *state* law, . . . we must defer to the state's construction of its own law." (internal quotation marks and citation omitted)). Because the sate court decided that the jury instruction was correct, appellate counsel cannot be faulted for having failed to challenge it on appeal. And since counsel would have failed had he acted as petitioner demands, petitioner cannot show prejudice.

If this court were to interpret the jury instruction, the claim would still fail. Petitioner's reading of the instruction is misplaced. The instruction given by the court does not direct a verdict of guilty if the victim died of "anything." Rather, it

says that where the "act," meaning hitting Mr. Knockel with a baseball bat, is dangerous, the defendant's act is not excused simply because the hospital committed malpractice.  Nowhere does petitioner point to a case that mandates any particular terms that must be used in a special instruction on the subject, nor has the court found any.  Therefore, to the extent that petitioner argues that appellate counsel erred in not challenging the specific language used in the special instruction, his claim is without merit.

Moreover, in his state habeas petition, petitioner argued that the instruction, as given, "did not adequately instruct the jury on the fact that they could acquit if they found beyond a reasonable doubt that the sole cause of death was a result of the injury rather than the negligent medical treatment."  (Ex. S, p. 7).  This argument makes no sense, because neither the instruction as given, nor the instruction as petitioner contends it should have been given, instructs the jury that it could acquit if it found that the sole cause of death was a result of the injury rather than the negligent medical treatment.  To the contrary, the instruction, either way, says quite directly that death contributed to by medical negligence does not excuse the original act of hitting the victim with a baseball bat, and that the defendant cannot escape the consequences of his act by blaming the doctors.[6]

On direct appeal appellate counsel raised other, potentially more meritorious issues, including ineffective assistance of counsel based on failure to object to the erroneous admission of damaging hearsay, and in failing object to the admission of a statement petitioner gave to police before the state established *corpus delicti* (ex. F).  Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit."  *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting *Alvord v. Wainwright*, 725 F.2d at 1291).  Further, the argument omitted from the appeal must have been significant enough to have

---

[6]It should be noted that petitioner does not argue, as trial counsel did, that <u>no</u> special instruction should have been given. He contends only that the instruction should have been given exactly as quoted from *Johnson, supra*.

affected the outcome of the appeal. *Nyhuis*, 211 F.3d at 1344 (citing *Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir. 1988)).  Moreover, "[i]t is difficult to win a *Strickland* claim on grounds that appellate counsel pressed the wrong legal arguments where the arguments actually pursued were reasonable in the circumstances."  *Johnson v. Alabama*, 256 F.3d 1156, 1188 (11th Cir. 2001).  The instruction given at trial is not materially different from the instruction petitioner contends should have been given.  Therefore, the omitted argument by appellate counsel was not significant enough to have affected the outcome of the case.

And even if the jury instruction issue had merit, which it did not, appellate counsel's failure to raise the issue was not unreasonable under prevailing professional norms because (1) "the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue," and (2) "effective advocates 'winnow out' weaker arguments even though the weaker arguments may be meritorious."  *See Heath v. Jones*, 941 F.2d 1126, 1130-31 (11th Cir.1991) (citing *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983)).  Petitioner's counsel's appellate advocacy must be judged in its entirety. *See id.* at 1131.  The record as a whole reveals appellate counsel raised important claims on direct appeal as noted above.  Appellate counsel's failure to include the jury instruction claim may have been a strategic decision to "winnow out the weaker arguments," given the lack of law supporting petitioner's jury instruction claim.  *See id.* at 1130-31.

Finally, even if appellate counsel's performance was deficient, petitioner cannot show prejudice.  As discussed above, the two instructions are not materially distinguishable.  If the instruction petitioner prefers had been given, there is no reasonable probability that the result would have been different.  The jury found that petitioner hit Mr. Knockel on the head with a baseball bat.  Mr. Knockel was in the hospital because of the head injury and the resulting brain surgery, and Mr. Knockel died, according to petitioner's experts, because someone allowed a piece of gauze to clog his airway.  Petitioner's proposed jury instruction, which says that improper

treatment of the "wound" from which the victim is suffering[7] does not afford protection to the accused, would not have made it more likely that the jury would have acquitted him.

The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.   Moreover, even reviewing the claim *de novo*, petitioner has not carried his burden of showing either defective performance by counsel, or prejudice, and therefore is not entitled to federal habeas relief, and the writ should not issue.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Walter A. McNeil has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED that the petition for writ of habeas corpus, (doc. 1) challenging the conviction and sentence in the case of *State of Florida v. Charles Taylor*, in the Circuit Court of Bay County, Florida, case no. 02-1081, be DENIED, and that this cause be DISMISSED and the clerk be directed to close the file.

At Pensacola, Florida this 29th day of October, 2008.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

---

[7]Buried in petitioner's factual argument is the implication that because Mr. Knockel was getting better he was no longer "suffering" from his head injury, and petitioner's proposed jury instruction would have given his attorney the opportunity to argue that fact.  No reasonable jury would have accepted such an argument.

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636;** *United States v. Roberts***, 858 F.2d 698, 701 (11th Cir. 1988).**